IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

ALBERT L. WILLAN,

                    Plaintiff,                        CV-09-1462-SU

       v.                                FINDINGS AND
                                        RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                    Defendant.

SULLIVAN, Magistrate Judge:

## **INTRODUCTION**

Plaintiff Albert Willan appeals the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision should be reversed and remanded for further proceedings in light of additional evidence produced after the ALJ's decision.

1 - FINDINGS AND RECOMMENDATION

Willan alleged disability beginning November 7, 2001, when he suffered a back injury at work. He alleges he can no longer work due to back problems, a blood clot in the left leg, fibromyalgia, headaches, and constant pain. Admin. R. 17, 89. He satisfied the insured status requirements of the Social Security Act through December 31, 2006. *Id.* at 19, 77. He must establish that he was disabled on or before that date to prevail on his Title II claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). There is no insured status requirement for his Title XVI claim.

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Willan satisfied the severity requirement of step two because the evidence showed that pain in the cervical and lumbar regions of the spine, depression, anxiety, and polysubstance abuse resulted in more than minimal limitation on his ability to work. Admin. R. 19. The ALJ found Willan retained the residual functional capacity ("RFC") to perform light work limited to simple, routine tasks of no more than three steps with limitations on postural activities such as bending, stooping, crawling, climbing, and so forth, and restrictions in exposure to dusts, fumes, and gases. *Id.* at 26. The ALJ found Willan's RFC left him unable to perform his past work. *Id.* at 27. The vocational expert ("VE") testified that a person with Willan's vocational factors and RFC could perform the requirements of light unskilled occupations such as produce sorter, small products assembler, and laundry worker. *Id.* at 27, 848-50. Based on the VE's testimony, the ALJ concluded that Willan had failed to show he was disabled within the meaning of the Social Security Act. *Id.* at 28.

After the ALJ issued his decision, Willan obtained additional medical evidence and a vocational evaluation in which the evaluator opined that he was unable to work. *Id.* at 814-21. Willan submitted this evidence to the Appeals Council with his request for review of the ALJ's decision. *Id.* at 8. The Appeals Council denied Willan's request for review. *Id.* at 5.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). The factual findings must be upheld if supported by inferences reasonably drawn from the record and if evidence exists to support more than one rational interpretation, the court must defer to the factual findings in the Commissioner's decision. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.    Claims of Error

Willan contends the ALJ erred at step two by failing to specify a pain disorder when enumerating his severe impairments. Willan contends the ALJ failed to assess his RFC accurately because he erroneously discounted the credibility of his subjective statements without giving legally adequate reasons for doing so. Willan contends the Commissioner erred by failing to review the ALJ's decision based on the evidence submitted after the ALJ's decision.

///

///

II.    **The Step Two Severity Requirement**

Willan contends the ALJ erred at step two by failing to identify a psychological pain disorder when specifying his severe impairments.  At step two, a claimant must meet what is called the severity requirement.  The claimant must show that he has any combination of impairments which causes more than minimal limitation in his ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant fails to make this *de minimis* showing, he is not disabled within the meaning of the Social Security Act and the disability determination process ends without proceeding to the remaining steps.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Here, the ALJ resolved step two in Willan's favor, finding his ability to work significantly affected by a combination of impairments.  Admin. R. 19.  The ALJ recognized that Willan was limited by back pain.  *Id.*  He did not attempt to determine whether Willan's pain could be divided into pain resulting from his medical condition and separable pain resulting from psychological distress.  Instead, the ALJ simply identified pain in the lumbar and cervical regions of the spine as severe impairments without identifying a psychological pain disorder as a separate distinguishable source of the pain.

After resolving step two in Willan's favor, the ALJ properly continued the decision-making process until reaching a determination at step five.  Any error in failing to designate a pain disorder as a separate and distinct severe impairment at step two did not prejudice Willan.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(Any error in omitting an impairment from the severe impairments identified at step two was harmless where step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(failure to list an impairment as severe at step two

was harmless error where the ALJ considered the functional limitations posed by that impairment later in the decision).

After a claimant has surmounted step two by meeting the severity requirement, an ALJ must consider, in the remaining steps of the decision, all evidence of functional limitations imposed by all the claimant's medically determinable impairments, including any that were not identified as severe at step two.  20 C.F.R. §§ 404.1523, 416.923.  Accordingly, the court reviews to determine whether the ALJ considered all evidence of functional limitations from a pain disorder in the remaining steps of his decision.

Willan contends the report of Donna Wicher, Ph.D., supports functional limitations attributable to a pain disorder.  Dr. Wicher performed an independent psychological examination in February 2004, including a review of extensive medical records, observation of a medical examination, administration of psychological testing, and a clinical interview.  Admin. R. 299.  Dr. Wicher obtained generally normal findings on her mental status evaluation, noting no indication of problems with memory, concentration, orientation, or delusional thought processes.  *Id.* at 304.

On personality testing, Willan produced a profile which indicated "he was most likely making a conscious attempt to distort his presentation of himself [by] overemphasizing his psychological distress and impairment."  *Id.*  Dr. Wicher noted that treatment of persons with such a profile should be based on objective findings because the patient's subjective complaints could not be relied on to provide accurate information.  *Id.* at 305.  Dr. Wicher diagnosed a pain disorder, a dysthymic disorder, an anxiety disorder, and polysubstance abuse.  She indicated Willan's mental condition imposed moderate impairment of global functioning, but did not identify specific

limitations in work-related functions or indicate activities Willan would be unable to perform due to the pain disorder.  *Id.*

The ALJ considered Dr. Wicher's evaluation and discussed the findings, diagnoses, and observations in his decision.  *Id.* at 22-23.  The ALJ gave due consideration to Dr. Wicher's global assessment of functioning, noting that even including the limiting effects of substance abuse, Dr. Wicher opined that Willan had only a moderate degree of functional impairment globally.  *Id.* at 23. With respect to specific functional limitations in work related areas, Dr. Wicher did not identify any for the ALJ to discuss.  It follows that the ALJ could not have included functional limitations from a pain disorder in his RFC assessment because none were identified by Dr. Wicher.  In the absence of such findings by Dr. Wicher, the ALJ reasonably relied on the expert opinions of agency reviewing psychologists who addressed the pertinent areas of function and found only mild difficulties in social functioning and maintaining concentration, persistence, or pace.  *Id.* at 24.

The ALJ's interpretation of Dr. Wicher's opinion is consistent with the record as a whole. Dr. Wicher described Willan's mental impairments, including the preexisting personality structure that gave rise to his excessive pain symptoms, as life-long conditions that began in Willan's developmental years.  As such, they existed throughout his employment history without preventing him from working.  Willan reportedly worked from the age of 14 until the alleged onset of disability, demonstrating that his mental impairments are not of a severity that would preclude appropriate work.  Dr. Wicher opined "there is no indication that his current symptoms are any worse now than they were prior to his injury," referring to the work injury at the alleged onset of disability.  *Id.* at 307.  Accordingly, Dr. Wicher's opinion supports the conclusion that Willan's mental condition was essentially the same before and after the alleged onset of disability.

In summary, the ALJ resolved step two in Willan's favor and considered all the evidence of functional limitations from a pain disorder in the remaining steps of his decision. Accordingly, the court finds no harmful error at step two of the ALJ's decision.

**III.    Credibility Determination**

Willan challenges the ALJ's assessment of his RFC on the basis that the ALJ discounted the credibility of his subjective statements without providing a legally adequate explanation for doing so. Willan provided written submissions alleging disability from back problems, a blood clot in the leg, and constant pain. Admin. R. 89. Willan said he has pain all over his body all the time, but does not take medication or receive other treatment for it. He chooses not to take pain medication because he does not want to be on drugs. Willan said he typically watches television or listens to music all day. He does not perform housework or yard work. He is able to prepare simple meals, perform his own personal care, and shop for groceries. *Id.* at 120-23. He can be up and active for a maximum of two hours before needing to rest. He cannot engage in any of the hobbies or activities he did in the past. He never goes out of his house to walk, visit friends, or engage in hobbies or pastimes. *Id.* at 128-30.

At the administrative hearing in October 2007, Willan testified that back pain is the primary reason he cannot work. *Id.* at 830. He has to lie down 14 to 16 hours a day. He can sit for only 20 minutes before he must stand or lie down. He can stand in place for only 20 minutes and walk for a maximum of 10 minutes. *Id.* at 831-32. He can lift a maximum of 10 pounds from counter height. He has no bladder or bowel control and has a couple of bathroom accidents per week. *Id.* Willan testified he is depressed and does not want to get out of bed. *Id.* at 837. He claimed to have problems remembering where he is, where he lives, and appointments. *Id.* at 838.

The ALJ accepted that Willan experiences pain which limits his exertional capacity to a light level, precludes climbing, and restricts some postural activities. The ALJ found Willan had mental impairments that limited him to "simple, routine, 1-2-3 step type work." *Id.* at 26. The ALJ did not accept that the intensity, persistence, and limiting effects of Willan's symptoms were so severe that he could not perform work within the restrictions of his RFC assessment. *Id.* at 25-26. Thus, the ALJ did not credit Willan's assertions that he must lie down most of the day, cannot sit, stand, or walk more than a few minutes at a time, cannot lift more than 10 pounds, and cannot remember well enough to complete simple, routine tasks.

Where the claimant has produced evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged, the ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-83 (9th Cir. 1996). In determining credibility, an ALJ may consider the objective medical evidence and the claimant's treatment history, daily activities, work history, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 *5. An ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ considered the proper factors in making his credibility determination. He found that the objective medical evidence was generally benign relative to Willan's subjective claims. For example, Willan asserted that he had crushed his neck while carrying a sheet of plywood overhead

when he was hit by a gust of wind in July 2001.  Diagnostic imaging from that time showed only mild degenerative changes in the cervical spine.  Admin. R. 173-74.  The work injury was described as "a relatively minor event with no objective evidence of injury."  *Id.* at 294.

From September 2001 until May 2004, Seldon Saks, M.D., provided Willan with primary care.  In September 2001, Dr. Saks noted an MRI study showing a herniated disc at C5-6 with a left sided mass effect.  He noted that Willan's subjective symptoms were predominantly right sided and did not correlate with the objective findings in other respects.  Dr. Saks therefore opined that his symptoms were not related to the herniated disc.  *Id.* at 348.  In his follow up examinations, Dr. Saks typically found mild spasm and tenderness in the cervical and thoracic regions of the spine and obtained variable ranges of motion with variable reports of the intensity of the pain.  Over the two and a half year treatment relationship, Willan gradually improved and tapered his pain medications.  In May 2004, at the last office visit, Dr. Saks observed no spasm or tenderness in the spine.  He released Willan to work with restrictions similar to the ALJ's RFC assessment: no lifting over 20 pounds, repetitive bending or twisting of the torso, climbing, squatting, or crawling.  *Id.* at 318.

Meanwhile, in January 2002, Keyvan Abtin, M.D., a spinal neurosurgeon, examined Willan for complaints of cervical radicular symptoms.  Radiographic images showed no obvious sign of disease in the cervical spine and Willan demonstrated relatively preserved good ranges of motion in the neck.  Willan's motor strength and reflexes were symmetrical and normal.  He had some loss of pinwheel sensation in both hands.  Dr. Abtin recommended conservative treatment with physical therapy and anti inflammatory agents.  *Id.* at 347.

In February 2002, a comprehensive independent medical examination by an orthopedic surgeon and a neurologist produced a diagnosis of neck and shoulder strain, but no chronic

condition. *Id.* at 195. There was no evidence of cervical radiculopathy or any basis for permanent

work limitations. Willan was cleared to return to his former work without restrictions. *Id.* at 194-96.

In April 2002, Todd Kuether, M.D., did a consultative neurosurgical examination. MRIs

revealed no abnormalities in Willan's spine and Dr. Kuether noted the cervical spine looked very

good. Willan had full motor strength, sensation was intact, and reflexes were normal. He had no

classic radicular symptoms and his symptoms were not consistent in that they varied from side to

side. A video fluoroscopy examination showed no cervical instability. *Id.* at 341.

In October 2002, another comprehensive examination produced generally normal findings

on ranges of motion, motor strength, and reflexes. Notably, Willan's sensory examination was not

valid because he gave varied responses on repetition. The examining physicians again opined that

he could return to regular work without limitations. *Id.* at 223-28.

Meanwhile, Roy Slack, M.D., administered a discogram and a series of nerve block

injections. These ultimately led, in February 2004, to destruction of the nerves at C4-5 by

radiofrequency neuroablation. *Id.* at 235-63. Dr. Slack believed Willan's C4-5 facet joints were

the primary source of his neck and shoulder pain. Dr. Slack made no findings and offered no opinion

regarding the functional effects of Willan's neck and shoulder pain. Contemporaneously, Ron Ruff,

M.D., a pain management specialist, reported that Willan demonstrated normal ranges of motion,

and normal strength throughout. Willan had indeterminate sensory loss that did not follow a

dermatomal path. Dr. Ruff opined that Willan was functionally capable of regular work without

restrictions. *Id.* at 313-14. Dr. Ruff reviewed Dr. Slack's progress notes and concluded that,

following the ablation of the nerves at C4-5, Willan's cervical spine was medically stationary. *Id.*

at 315.

In June 2005, Willan was examined by James Harris, M.D., an occupational health specialist. Dr. Harris found Willan's subjective neck pain out of proportion to the objective findings. He noted that Willan was vague and inconsistent in his responses and his presentation was dramatic. Dr. Harris did not doubt that Willan experienced some degree of pain, but felt the medical evidence, the minor nature of Willan's injury, and his failure to respond to intensive treatment including ablation, left Willan's profound level of incapacity unexplained. Dr. Harris opined Willan had the RFC to lift a maximum of 35 pounds, to lift 15 to 20 pounds frequently, to stand for a total of four hours and walk for a total of three hours during a normal workday. He found no basis for limitation in Willan's ability to sit throughout the day. *Id.* at 469-71.

In January 2006, Willan visited the emergency department after a motorcycle accident. CT scans and x ray images did not reveal any injury and Willan was diagnosed with a neck and back strain. Willan was ambulatory after pain medications were administered. *Id.* at 499, 511, 513, 515, 519. Willan returned to the emergency room from time to time thereafter to obtain medications for neck pain. *Id.* at 501, 503.

The ALJ's conclusion that the medical evidence does not support the intense symptoms and incapacity Willan claimed flows logically from the mild and inconsistent medical findings in the record. The absence of objective medical evidence cannot be the sole basis for discrediting subjective testimony, but is a proper factor in the credibility analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch,* 400 F.3d at 681. The ALJ's conclusion that the objective evidence did not explain the debilitating symptoms Willan alleged is supported by substantial evidence in the record. Accordingly, it was reasonable for he ALJ to draw an adverse inference as

to the credibility of Willan's assertions from the absence of objective medical evidence to support those assertions.

The ALJ also looked at the evidence of activities inconsistent with Willan's allegations. For example, the ALJ noted that in February 2004, an examining physician observed Willan's hands were "heavily calloused with diffusely embedded dirt" in a manner that could "only occur with repeated, regular, heavy physical use of the hands." Admin. R. 293, 295. The physician concluded Willan was working to a greater degree than he admitted. *Id.* at 295. The ALJ also noted that Willan crashed his motorcycle in January 2006 while high on methamphetamine and admitted riding it regularly until that time. *Id.* at 26, 842. This information is inconsistent with Willan's alleged exertional limitations and his claim that on typical days he spends all day lying down listening to music or watching television and never goes out of the house to engage in pastimes. The ALJ also noted that a third party questionnaire indicated Willan performed a range of typical household activities that appear to be inconsistent with Willan's allegations of difficulty with memory, concentration, persistence and inability to tolerate standing, walking or sitting for more than a few minutes.

The ALJ pointed out that Willan testified he does not take pain medication because he does not want to be on drugs. *Id.* at 25, 829. Contrary to this, the record shows that Willan used narcotic pain medications throughout the time he was treated by Dr. Saks, and afterwards obtained narcotic pain medications from emergency care. When evaluated in 2002, Willan said he was using up to 12 Vicodin per day. *Id.* at 181. In addition, the ALJ took issue with Willan's testimony regarding his abuse of street drugs. Willan testified that he did not use street drugs between May 2006 and the date of the hearing in October 2007, and had not used them for three years before the last time in

May 2006. *Id.* at 834-35, 841-42. The ALJ pointed out that Willan's alleged cessation of drug abuse was not corroborated by any medical source or other witness, that Willan had been high on methamphetamine in January 2006 when he crashed his motorcycle, and that he admitted regular use of methamphetamine, heroin, cocaine, and alcohol within a few days of his evaluation by Dr. Wicher in February 2004. *Id.* at 25, 304, 842. Willan's description of his substance abuse does not appear to be candid. Statements by the claimant which appear to be less than candid support an adverse inference as to the claimant's credibility. *Smolen v. Chater*, 80 F.3d at 1284; SSR 96-7p.

The ALJ also relied on the personality testing performed by Dr. Wicher which indicated Willan was most likely distorting his presentation to over emphasize his level of impairment. Admin. R. 304. Willan argues that this evidence could be interpreted differently. He urges the court to find that the distortion in his presentation was an unintended result of a pain disorder instead of an intentional misrepresentation. This argument fails because the ALJ's interpretation of Dr. Wicher's opinion is rational and consistent with the record as a whole. Dr. Wicher did not say a pain disorder was an equally likely cause of Willan's distorted presentation. Dr. Wicher said it was the most likely cause. The court must affirm the Commissioner's rational interpretation of evidence and may not substitute a different view even if it is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039. In addition, Willan's argument cannot establish that his subjective symptoms are credible, only that he distorted them unintentionally.

In conclusion, the ALJ's credibility determination is supported by clear and convincing reasons based on inferences reasonably drawn from the record. His decision provides an adequate basis for me to conclude that he did not discredit Willan's subjective symptoms arbitrarily. Accordingly, the credibility determination should be upheld. *Tommasetti v. Astrue*, 533 F.3d 1035,

1039 (9th Cir. 2008); *Batson*, 359 F.3d at 1193; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

2002).

IV.    **Post Decision Evidence**

The ALJ conducted the administrative hearing on Willan's disability claim in October 2007

and held the record open for 30 days thereafter to permit Willan to submit additional evidence.

Admin. R. 822, 854.  In February 2008, the ALJ issued a decision adverse to Willan.  *Id.* at 14.  In

April 2008, several weeks after learning of the adverse decision, Willan sought and obtained a

vocational evaluation from Peggy Wright, a certified rehabilitation counselor.  *Id.* at 814-21. Willan

submitted this evidence, together with medical evidence which indicated no change in his condition,

to the Appeals Council with his request for review of the ALJ's decision.  The Appeals Council

made this additional evidence a part of the administrative record.  *Id.* at 8.  In November 2009, the

Appeals Council denied Willan's request for review, stating that it had reviewed the additional

materials submitted and did not find the ALJ's decision contrary to the weight of all the evidence

in the record.  *Id.* at 5-6.

The Commissioner argues that the vocational evaluation should not be considered because

Willan did not show good cause for failing to produce the evidence before the administrative

hearing.  The Commissioner's argument is appealing because claimants should be discouraged from

waiting until they receive an adverse determination before seeking out favorable evidence that is

readily available.  *See Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001).  Nevertheless, the

Commissioner's argument cannot be sustained here.  The good cause requirement in sentence six

of 42 U.S.C. § 405(g) pertains to claimants seeking remand from the federal court based on new

evidence which the claimant failed to incorporate into the administrative record.  Here, the additional

evidence was made part of the administrative record by the Appeals Council. Under these circumstances, the court considers on appeal both the ALJ's decision and the additional material before the Appeals Council in its review of the Commissioner's final decision. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2001); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); 20 C.F.R. §§ 404.970(b); 416.1470(b). The Commissioner's reliance on *Mayes* is misplaced because in that case, the court expressly found it unnecessary to decide whether good cause is required for submission of new evidence to the Appeals Council. *Id.* at 461 n.3. Therefore, this court considers the entire record, including the additional materials submitted to the Appeals Council, in accordance with *Harman*, *Ramirez*, and the applicable regulations.

Where a claimant seeks review from the Appeals Council based on evidence not presented to the ALJ, the Appeals Council must provide such review if the submitted evidence is new, material, and relates to the period on or before the date of the ALJ's decision. *Ramirez*, 8 F.3d at 1452; 20 C.F.R. §§ 404.970(b); 416.1470(b). I have no difficulty concluding that the additional evidence here is new and relates to the period that was relevant for the ALJ's decision. Evidence is material only if there is a reasonable possibility that the new evidence would have changed the outcome of the Commissioner's decision if it had been before the Commissioner at the time the decision was made. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984).

I am satisfied that there is a reasonable possibility that the additional evidence would have changed the outcome of the disability determination if this evidence had been before the ALJ and the ALJ had determined that it was consistent with the medical evidence and the record as a whole and had elicited testimony from the VE with assumptions based on the new evidence. At this

juncture, it is unclear whether the ALJ would have accepted the findings in the vocational evaluation or offered legally sufficient reasons to reject it. These matters must be resolved at the administrative level.

Willan argues that the record is now closed and he is entitled to a finding of disability and an award of benefits. This contention is rejected. Although it is proper for the court to consider the evidence presented for the first time to the Appeals Council in determining whether the ALJ's adverse disability finding is supported by substantial evidence, it would not be appropriate to hold as a matter of law that the claimant is disabled based on evidence the ALJ has not considered and the VE has not addressed. *Harman*, 211 F.3d at 1180. The appropriate remedy is to remand for further proceedings in which the ALJ may consider and weigh the new evidence in context with the record as a whole and elicit vocational expert testimony based on hypothetical assumptions that accurately reflect the claimant's RFC. *Id.*

## **RECOMMENDATION**

Based on the foregoing findings and conclusions, the Commissioner's final decision should be reversed and remanded for further proceedings to evaluate the evidence presented to the Appeals Council with Willan's request for review. A final judgment should be entered pursuant to sentence four of 42 U.S.C. § 405(g).

**<u>SCHEDULING ORDER</u>**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

DATED this 16th day of May, 2011.


/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge